IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Michelle Lam, | Case No. 20-12965 |
| Debtor. | Hon. Timothy A. Barnes |

### NOTICE OF FILING

To:   Patrick S. Layng – Service via CM/ECF
      David Siegel – Service via CM/ECF

Please take notice that on August 16, 2020, I filed Trustee's Memorandum in Opposition to Debtor's Motion to Convert to Chapter 13, a copy of which is served upon you herewith.

Respectfully Submitted,

/s/ David P. Leibowitz
Trustee

### CERTIFICATE OF SERVICE

The undersigned attorney served the within document upon the persons to whom notice is directed on August 16, 2020 through the Court's CM/ECF system.

*/s/ David P. Leibowitz*

David P. Leibowitz
Illinois Attorney 1612271
53 W Jackson Blvd – Suite 1115
Chicago, IL 60604
dleibowitz@lodpl.com
312 662 5750
(during COVID-19 crisis 847 334 6116)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Michelle Lam, | Case No. 20-12965 |
| Debtor. | Hon. Timothy A. Barnes |

**Trustee's Memorandum in Opposition to Debtor's Motion to Convert to Chapter 13**

David P. Leibowitz, Chapter 7 Trustee submits his Memorandum in Opposition to Debtor's Motion to Convert.

**Statement of the Case**

Debtor, Michelle Lam, filed this chapter 7 case on June 25, 2020. At the time of filing of this case, Debtor filed her Petition and Statement of Financial Affairs as required by law. She also filed a credit counseling certificate as required by law.

David Leibowitz was appointed interim trustee. Debtor has not appeared at a meeting of creditors pursuant to Section 341 of the Bankruptcy Code.

Debtor's petition contained, among other things the "Notice Required by 11 U.S.C. §342(b) for Individuals Filing for Bankruptcy". This form explains, among other things, the types of bankruptcy available to individual debtors including both chapter 7 and chapter 13. It also explains the consequences a debtor may face if a person makes a false statement in their bankruptcy petition (Petition, Docket 1, pages 42-45).

Debtor's Bankruptcy Petition contained schedules I and J that were signed by the Debtor under the penalty of perjury as well. In these statements of income and expense, Debtor set out the following as her income and expense as of the date of the petition.

| **Income** | | **Expense** | |
|---|---|---|---|
| Gross | $2,998.67 | Homeowner Expense | $1,650.15 |
| Payroll Deductions | ($1,033.58) | Maintenance | 200.00 |
| | | Utilities | |
| | | Electric | 200.00 |
| Net Pay | $1,995.09 | Water | 150.00 |
| Rent | 700.00 | Telephone | 250.00 |
| | | | |
| **Monthly Income** | **$2,695.09** | Food | 500.00 |
| | | Childcare | 100.00 |
| | | Clothing | 100.00 |
| | | Transportation | 200.00 |
| | | Entertainment | 120.00 |
| | | Charity | 475.00 |
| | | Insurance | |
| | | Life | 10.00 |
| | | Health | 250.00 |
| | | Vehicle | 115.00 |
| | | | |
| | | **Monthly Expense** | **$4,400.15** |

**Monthly Net Income (Deficit) = ($1,705.06)**

While the Debtor's petition reflected a deficit between income and expense of $1,705.06, the petition asserted that the value of her house was $285,000 whereas the mortgage against the house was $185,000. The Debtor's petition reflects unsecured claims of just under $28,000. Clearly, the gross equity of $85,000 in Debtor's residence would allow for payments to be made in full to Debtor's creditors almost immediately, with interest and likely surplus to the Debtor.

Nevertheless, Debtor in spite of her sworn statements under oath in her original bankruptcy petition, and notwithstanding the fact that the Debtor has no disposable income based

on her current earnings and expense, Debtor has filed a Motion to Convert and a proposed plan that depends entirely upon contributions from others in order to establish any disposable income at all.

Moreover, the Debtor's Proposed Plan posits a completely different table of income and expense than she stated to be the case, under oath, at the time she filed the case.

The Amended Budget has the following features (material changes highlighted in bold):

| Income | | Expense | |
|---|---|---|---|
| Gross | $3091.00 | Homeowner Expense | $1,650.15 |
| Payroll Deductions | ($1,111.00) | Maintenance | 0.00 (-$100) |
| | | Utilities | |
| | | Electric | 175.00 (-$25) |
| Net Pay | $1,980.00 | Water | 100.00 (-$50) |
| Rent | **1,200.00** | Telephone | 250.00 |
| Family Support | **700.00** | | |
| **Monthly Income** | **$3,880.00** | Food | 610.00 (+$110) |
| | | Childcare | 0.00 (-$100) |
| | | Clothing | 115.00 (+$15) |
| | | Transportation | 200.00 |
| | | Entertainment | 120.00 (-$120) |
| | | Charity | 475.00 (-$475) |
| | | Insurance | |
| | | Life | 10.00 (-$10) |
| | | Health | 250.00 (-$225) |
| | | Vehicle | 115.00 |
| | | **Monthly Expense** | **$3,330.00** |

**Disposable Income $550,00**

Somehow, rental income for the second unit of the Debtor's real estate has increased by $500.00 per month since the commencement of this case! Her salary seems to have increased somewhat as well. Her other expenses seem to have changed materially in amounts set forth on the table above.

Debtor now claims to have $550 per month of gross income in excess of expense. This seems to be due to (a) substantial, sudden and unexplained sudden increase in rental income and (b) promised family contributions of $700 per month along with drastic changes in expense

**ARGUMENT**

    **I.    Debtor has acted in bad faith and thus is ineligible to convert her case to chapter 13**

Chapter 7 debtors do not have the absolute right to convert their case to a case under chapter 13. If the debtor acts in bad faith – that is to say not in good faith – then the bankruptcy court has the inherent authority to deny a motion to convert. *Marrama v. Citizens Bank of Boston,* 549 U.S. 365 (2007). Here, the Debtor was notified and aware of her choices of filing a chapter 7 case or a chapter 13 case pursuant to the notice that her attorney gave her as required by Section 342(b) of the Bankruptcy Code. Her budget reflected that she had expenses hopelessly in excess of her income. Only after the Trustee advised her attorney that (a) he objected to the improper exemption claimed as to her real estate under the "Wild Card" provisions of Illinois Law and (b) that there was considerable equity that would require either (i) purchase of that equity from the Trustee or (ii) liquidation of the house to immediately satisfy creditors claims did the Debtor amend her schedules, claim that she would have family contributions for the term of her plan and submit a new plan that entirely depended on family contributions in order to generate disposable income.

    **II.    Even if the Debtor had not acted in bad faith, the Proposed Plan (a) has not been proposed in good faith and (b) is not in the best interests of creditors.**

The proposed plan has not been proposed in good faith. It depends entirely upon the contributions of others. There is no evidence or any indication that the contributions of the others can or will continue for the term of the plan. Accordingly, the plan is not proposed in good faith,

11 U.S.C. §1325(a)(3). Moreover, the proposed plan can't be confirmed as it is not in the best interests of creditors as required by 11 U.S.C. §1325(a)(4). Even though the proposed plan claims to provide for payment of 100% to unsecured creditors over the plan period, chapter 7 would result in all claims of creditors being paid 100% plus interest as soon as the Debtor's residence has been liquidated. This will not require the long period of time called for in chapter 13. Therefore, the proposed plan does not meet the requirements of 11 U.S.C. 1325(a)(4) – the "best interests of creditors test".

"[G]ood faith must be defined on a case-by-case basis because '[a] comprehensive definition of good faith is not practical.'" *In re Smith,* 848 F.2d 813, 817 (7th Cir. 1988).

Factors useful for defining good faith in a particular case include the following: (1) Does the proposed plan state [debtor's] secured and unsecured debts accurately? (2) Does it state [debtor's] expenses accurately? (3) Is the percentage of repayment of unsecured claims correct? (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court? (5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors," *[I]n re Beaver*, 2 B.R. 337, 340 (Bkrtcy. S.D. Cal. 1980) *Smith*, 848 F.2d at 817.

In this instance, the Debtor clearly acted in bad faith. Her initial petition and her amended petition reflect wild variances in income and expenses. Payments over a period of time dependent solely on the contributions of relatives compared to immediate payment on liquidation of her property does not indicate a "fundamental fairness in dealing with creditors". Even if the Debtor is deemed not to have acted in bad faith, the Debtor's plan has not been proposed in good faith and is not in the best interests of creditors.

**CONCLUSION**

For the foregoing reasons, Debtor's motion to convert should be denied. In the alternative, even if the Debtor's motion to convert were to be granted, the Debtor's case should be immediately reconverted to a case under Chapter 7.

    Respectfully submitted

    */s/ David P. Leibowitz*
    Chapter 7 Trustee

David P. Leibowitz
Illinois Attorney 1612271
Law Offices of David P. Leibowitz, LLC
53 W Jackson Blvd – Suite 1115
Chicago, IL 60604
312 662 5750
dleibowitz@lodpl.com
During COVID-19 Crisis – 847 334 6116